NEW YORK COUNTY.— HON. D. G. ROLLINS, SURROGATE.—April, 1885.

BUCHAN <em>v.</em> RINTOUL.

*In the matter of the judicial settlement of the account of* JAMES RINTOUL, *as trustee under the will of* THOMAS B. RICH, *deceased.*

As to what is the proper judicial interpretation of the expression " legal heirs of the estate," occurring in a will, *quære.*

Testator, by his will, bequeathed to O. the sum of $5,000, gave to his wife a life interest in the residue of his estate, and established a scheme for the distribution of the remainder after her death. A codicil to the will contained the following clause: "In the second article of my will of the bequest to Rachel Oliver my wife's sister the sum of $5,000 I revoke and instead bequeath unto her the sum of $300 to be paid to her annually in equal quarterly payments during her natural life at which time will cease and go to the legal heirs of the estate in equal sums to be paid by my acting executrix and executors." The widow died after O., who had received her annuity of $300, though no fund to produce it had been specially set apart. The estate being about to be distributed, decedent's next of kin claimed to be entitled to $5,000 by virtue of the clause quoted.—

*Held,* that so much of this clause as followed the word " cease " was void for uncertainty, and that the estate should be distributed as if the codicil ended with that word.

CONSTRUCTION of decedent's will upon judicial settlement of account of trustee thereunder. Robert C.

Buchan and others, next of kin of the decedent, appeared in the proceedings. The facts are stated in the opinion.

DAVENPORT & LEEDS, *for trustee.*

COUDERT BROS., *for R. C. Buchan and others.*

R. S. CLARK, *for Ann McClure.*

W. R. BARBOUR, *for Jane Rich and others.*

THE SURROGATE.—This decedent left several testamentary papers that, taken together, constitute his last will. The earliest of these papers contains a provision, not revoked or modified by any of later date, whereby he gave his wife a life interest in his residuary estate, and established the scheme for the distribution of the remainder after her death. By another article in the same instrument, he bequeathed to his wife's sister, Rachel Oliver, the sum of $5,000. This bequest was afterwards revoked by a codicillary provision, and in its place was substituted a life annuity of $300, which sum was statedly paid to her until she died. Resort was had, for such payment, to the income of the estate generally, and no particular fund was ever set apart for producing the interest or income to feed the annuity. The testator's widow outlived Rachel Oliver, but is now deceased, and as the estate is about to be distributed the question arises, what force and effect, if any, can and should be given to certain obscure language in that clause of the third codicil which makes provision for the Rachel Oliver annuity.

Counsel for the residuary legatees claims that this

language is utterly meaningless; but, on behalf of the next of kin, it is insisted that it should be construed as giving to themselves an interest in decedent's estate to the amount of $5,000. Their counsel has undertaken to show how, by certain omissions, transpositions, interpolations and substitutions of words and phrases, the provision in dispute can be transformed into an intelligible and definite bequest to his clients. There are difficulties in the way of adopting the interpretation for which he contends; difficulties that cannot be better illustrated than by juxtapositing the codicil as it is with the codicil as he translates it, and thus observing how many and how serious are the changes that are admittedly necessary, before the provision in question can appear in the guise of a bequest of five thousand dollars to the next of kin.

Below is set forth, in the left hand column, the actual codicil; in the column at the right, the words that I am asked to reject are in brackets, and those that I am asked to insert are in italics.

| | |
|---|---|
| "In the second article of my will of the bequest to Rachel Oliver my wife's sister the sum of $5,000 I revoke and instead bequeath unto her the sum of $300 to be paid to her annually in equal quarterly payments during her natural life at which time will cease and go to the legal heirs of the estate in equal sums to be paid by my acting executrix and executors." | In the second article of my will [of] the bequest to Rachel Oliver, my wife's sister, *of* the sum of $5,000 I revoke and instead bequeath unto her, *from the income of said amount,* the sum of $300 to be paid to her annually in equal quarterly payments [during her natural life] *until the time of her death,* at which time *the annuity* will cease, and *the said principal sum of five thousand dollars* go to the legal heirs of the estate in equal sums to be paid by my acting executrix and executors. |

I should have grave doubts, even if the testator had used the very language which is thus sought to be substituted for his own words, whether the gift over would not be void for the uncertainty of its description of the persons included in the term "heirs of the estate." Had the testator used the word "heirs" simply, that word might fairly enough be treated as substantially synonymous with the term "next of kin." This expression, "heirs of the estate," is one that, so far as I am advised, has never received judicial interpretation; but it is not infrequent in common parlance for people to speak of the beneficiaries under a will as the "heirs" of the testator, even though such beneficiaries are strangers to his blood. That this decedent meant to indicate, by the phrase "heirs of the estate," his residuary legatees seems to me quite as reasonable a conjecture as any other that could be suggested.

The difficulty of interpreting these words is not, however, the most serious one that must be compassed before the codicil here in dispute can be made intelligible. The chief obstacle lies in this: the testator says that he bequeaths an annuity of $300 to be paid to Rachel Oliver annually "during her natural life, at which time will cease and go to the legal heirs," etc. Now, assuming that the phrase "during her natural life" may fairly be construed, in the light of the context, as meaning "until her death," what is it that was then to "cease?" "Cease" is here a predicate without a subject. But if, in spite of this grammatical inaccuracy, the clause can be treated as having any meaning at all, is it not

clear that the thing that the testator directed to
" cease " with Rachel Oliver's life is the annuity of
$300 ? And is it not equally clear that the thing
that was to " cease " is the very thing that, upon
Rachel's death, was to " go to the legal heirs of the
estate ? " It would scarcely be contended that such
an indefinite and indeterminate gift of the annuity
could be held valid; but if the legal heirs were not
at Rachel's death, to take the annuity, what is it that
they were to take ? Counsel for the next of kin an-
swers : " five thousand dollars." He insists that, by
comparing the provision for Rachel Oliver's benefit in
the will proper with the substituted provision in the
codicil, it will appear that the testator's purpose in
changing the form of his bequest was, first, to pro-
vide for payment to the beneficiary, during her life,
of $300, annually, *from the income of the five thou-
sand dollars* that he had originally bequeathed to her
outright, and, secondly, to divert the principal sum
of $5,000 into the hands of his next of kin after such
beneficiary should die.

This interpretation of the disputed provision in-
volves the notion that the executors would not have
been warranted in setting apart a larger sum than
$5,000 for producing the annuity, and that Rachel
Oliver's right to receive as much as $300 annually
was dependent on the contingency that a sum as large
as $300 should be annually obtained from investment
of the $5,000. I find no sufficient warrant for this
theory in any of decedent's testamentary papers.
For aught that they disclose, it may have been his
chief and possibly his sole design, in making the

amended provision, to insure the enjoyment by the beneficiary of the full annual sum of $300, even though an amount much larger than $5,000 might be required for producing it. Whether he intended that result or not, there can be little doubt that he actually accomplished it; and if Rachel Oliver had outlived the decedent's widow, and the executors had then set apart, say $7,500, in government bonds at four per cent., for producing the annuity, it might plausibly enough have been claimed, upon her death, that the whole fund of $7,500 passed under the codicil to the "heirs of the estate;" and such a claim would have had quite as substantial foundation as the one now interposed. All in all, I confess my inability to penetrate the obscurity in which the testator has veiled his intentions. I hold that all that follows the word "cease," in the third codicil, is void for uncertainty, and that the estate should be distributed as if the codicil ended with that word.